determine upon the necessity, etc., must also necessarily do the same in order that it may appear what proposed highway is before the court. In the present case the description is in the application to the highway commissioners, the petition, the notice of presentation thereof to the court, the order appointing the commissioners, and their certificate of decision.

The starting point is fixed with precision, and not "about," as is claimed. The words of the description are as follows:

"Commencing at a point in the westerly side of a highway known as Higbie's Lane, *the middle line of said proposed highway being about 300 feet southerly (measured along the westerly side of Higbie's Lane) from the land of the Long Island Railroad Company on which the track of the Montauk Division of said railroad is laid,* and being 85 feet southerly from the southeast corner of land of Mrs. Brimley; and from said point of beginning running," etc.

The words I have italicised are obviously surplusage and of no effect, and if they be disregarded it will be seen that the starting point is fixed with precision. The contention that the proposed highway is not authorized by law because it does not terminate in another highway, or is a cul de sac, is without support in law. It runs to the center of a creek which divides the town from another town. Highways often terminate in open fields. It would be quite impossible to open highways gradually if every one had to terminate in an existing highway. The point that the commissioners acted on an erroneous principle in assessing the damages is unfounded. No such thing appears in the record. The order appealed from is not reviewable in respect of the necessity of the proposed highway or of the amount of damages (section 89).

The order should be affirmed.

Final order of the County Court of Suffolk county affirmed, with costs. All concur.

(129 App. Div. 427.)

## SMITH v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1908.)

1. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—TOOLS AND IMPLEMENTS—CARE REQUIRED.

A master is not bound to provide tools and implements which make accidents impossible, but he performs his duty when he has supplied reasonably safe tools and appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 181; Dec. Dig. § 101.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—EVIDENCE OF NEGLIGENCE.

Evidence, in an action against a master to recover for injuries, considered, and *held* not to show negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 954; Dec. Dig. § 278.*]

3. APPEAL AND ERROR (§ 262*)—RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—EXCEPTIONS.

Defendant moved to dismiss the complaint after the evidence was all in, on the ground that plaintiff had failed to show negligence or absence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of contributory negligence, and the court reserved its decision, and defendant took no exception, and the case was sent to the jury. On the jury coming in with a verdict for plaintiff, defendant moved to set it aside and for a new trial, and the court reserved its decision on this motion without exception by defendant. Subsequently the court denied the motion for a new trial, and defendant appealed. *Held*, that defendant was not debarred from objecting that plaintiff failed to show negligence because of failure to take exceptions to the ruling of the trial court, as under Code Civ. Proc. § 999, giving the trial judge right to entertain a motion at the same term for a new trial, and giving the right of appeal from his order thereon, the decision of the judge need not be made at once, and consequently no exception is necessary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1584; Dec. Dig. § 262.*]

Appeal from Trial Term, Queens County.

Action by Michael L. Smith against the Long Island Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

Matthew J. Keany, for appellant.
William E. Weaver, for respondent.

WOODWARD, J. The plaintiff in this action was employed as a cable splicer for the telephone department of the defendant, and it appears to have been his duty, with a helper named O'Garr, to remove the covers of manholes and to perform work in the conduits, and then to replace such covers. They had been working under the direction of one Brannigan, who will be assumed for the purposes of this appeal to have occupied the position of a superintendent within the provisions of the employer's liability act (Laws 1902, p. 1748, c. 600), along the Atlantic Division of the defendant's railroad, and had been supplied with implements, which are referred to as "hooks," for the purpose of handling these covers. On the day of the accident complained of, the plaintiff and O'Garr reported to Brannigan, who directed them to go to Euclid avenue, to manholes Nos. 5 and 6, and to open the same and determine whether the gas which was escaping from these manholes was natural gas or sewer gas. These manhole covers appear to be of cast iron, about 2½ to 3 inches in thickness, and about 2 feet square, perforated with holes, and weighing between 200 and 300 pounds. At this time the plaintiff told Brannigan that he had left his tools at Nostrand avenue, a point upon the same line, about two miles away, and that he thought he ought to go and get them. To this Brannigan replied that it was not necessary; that he could go into the flagman's station near the place on Euclid avenue and find something to do the work with, as there were only two of the manholes to open. The plaintiff thereupon went to the point indicated, with his helper, found two old pokers, and proceeded with the work. The cover of the first manhole was lifted and replaced without accident. The second cover was likewise lifted, the examination was made, and the plaintiff with the helper turned the cover up on its edge, using their hands for the work, and were working it along to a point where they could let it fall down

into place, when the helper's foot slipped on a pebble, and the cover turned over on the plaintiff's foot, causing injury. It seems that the manhole at this particular point was slightly below the general surface, in a cup-shaped basin, and was not as well adapted for receiving the cover as the former one; and the alleged negligence consists in the fact that the defendant's so-called superintendent had directed the plaintiff to find something to do the work with at the flagman's station, instead of permitting him to go two miles for the purpose of getting his regular hooks.

There is not a word of evidence that this alleged superintendent told the plaintiff to take any particular kind of tools, or that the tools which the plaintiff did take had any defects. The evidence is that the old pokers served the purpose of removing the covers, obviously the most difficult part of the work, and, so far as the evidence goes, it does not show that these pokers may not have been reasonably adapted, or that they were not in fact reasonably safe tools, for the performance of this particular work. The hooks described by the plaintiff were merely iron bars with a hook at one end and a loop at the other; these hooks being designed to pass through the holes in the manhole covers, and the loop at the end being for the purpose of permitting a stronger lifting hold. It does not appear that these pokers did not have a hook at the end, or that they could not have been used in substantially the same manner as the regular hooks; but, whether or not this is so, the evidence is that the plaintiff and his helper were not attempting to use these pokers. They were merely engaged in handling a piece of cast iron of the general dimensions above noted, as simple a piece of work for two men as could be well imagined, and where it was entirely obvious that if it fell it would be likely to crush anything under it. The dangers were obvious to them. They knew the danger just as well as any master could have told them, and, if they chose to go on with the work, clearly no one was responsible for the injury except the two men who were engaged in the work. If Brannigan had told the plaintiff to go to the flagman's and take a broomstick to perform this work, and the plaintiff had been ignorant of the strength of the broomstick, and it had broken in the performance of the work, and injury had resulted, there might be some shadow of justice in the case; but when we reflect that what Brannigan directed was merely to go there and find something to do the work with, leaving it to the plaintiff to determine what he should make use of, and when it appears that the implements found and used did prove reasonably safe and adequate for the performance of the work, and that the accident happened only when the plaintiff and his helper sought to replace the cover without the use of any implements other than their hands, and such as most men would naturally adopt as the most feasible way of performing the work, the whole case is barren of any foundation of negligence of any duty which the master owed to the plaintiff. There is no allegation that the plaintiff was not afforded a reasonably safe place in which to do this work, no suggestion that he was not furnished with reasonably competent help, or that the tools actually used were not reasonably safe for the work which was done with them. The master is not bound to provide tools and implements which make accidents impossible. He has performed his

duty when he has supplied reasonably safe tools and appliances, and in the performance of a simple task, like replacing the top of a manhole, it is doubtful if the master owed the duty of furnishing any tools. Able-bodied men, with hands and ordinary intelligence, would not hesitate long to assume the work of lifting a piece of iron of the weight and dimensions stated and placing it in position, and if the truth were known it is doubtless true that, if the plaintiff had had his hooks with him, he would have performed this part of the work just as he did. At any rate, there is no possible negligence shown in the discharge of any duty which the master owed to the plaintiff.

But it is urged by the respondent that the defendant is not entitled to raise this question here. At the close of the case defendant renewed its motion to dismiss the complaint on the grounds that the plaintiff had failed to show negligence on the part of the defendant, or absence of contributory negligence. On this motion the court reserved decision. The defendant took no exception to this reservation of decision, and the case was sent to the jury. On the jury coming in with a verdict for the plaintiff, defendant moved to set aside the verdict and for a new trial on the minutes, on the grounds set forth in section 999 of the Code of Civil Procedure, and on this motion the court also reserved decision. No objection or exception to this was made, and subsequently the court denied the motion; the defendant appealing from that order, as well as from the judgment.

There has been some confusion upon the subject, growing out of the rule enunciated by the Court of Appeals, which is confined to the review of questions of law; but we are of the opinion that, where the defendant duly moves to set aside the verdict under the provisions of the Code of Civil Procedure, he is not deemed to have waived his rights by not objecting and taking an exception to the court's action in reserving decision. Section 999 of the Code of Civil Procedure clearly contemplates that the decision need not be made at once. The language is that the "judge, presiding at a trial by a jury, may, in his discretion, entertain a motion, made upon his minutes, at the same term," etc. He may entertain the motion, and the very character of the motion, to review the case upon the court's own rulings, indicates a purpose on the part of the Legislature to permit deliberation, and the declaration of the court that it reserves decision is entirely in harmony with the purposes of the statute. There is nothing to complain of until the court has passed upon the motion; it may be in favor of the moving party. The section recognizes the right to appeal from the order, not from the ruling on the motion, and the right to appeal from the order is a right to review all of the questions raised by the motion, which, in this case, reaches the question of law whether upon all the facts which the jury might find under the evidence the defendant is liable. It has been held in many cases of high authority that this court, as distinguished from the Court of Appeals, might review questions going to the vital substance of a fair trial without exception. Thus it was said in the case of Hamilton v. Third Avenue R. R. Co., 53 N. Y. 25, 27, that the General Term, upon the appeal from the order of the Special Term, "had the power, and it was the duty of each, to examine and determine whether the verdict was against the weight of evidence and the justice

of the case, and if of opinion that it was to set it aside and order a new trial. The further duty was incumbent upon them to examine whether upon the trial the defendant sustained any injury from the jury having been misled by any improper remarks of the judge during the trial which were not excepted to or not the proper subject of an exception." See Whittaker v. D. & H. Canal Co., 49 Hun, 400, 405, 3 N. Y. Supp. 576, and authorities there cited; Gillett v. Trustees of Kinderhook, 77 Hun, 604, 605, 28 N. Y. Supp. 1044, and authorities there cited; McGrath v. Home Insurance Co., 88 App. Div. 153, 157, 84 N. Y. Supp. 374, and authorities there cited.

The judgment and order appealed from should be reversed, with costs. All concur.

GAYNOR, J. (concurring). I do not find that the respondent makes any question that a trial judge may reserve decision on the motion for a new trial on the minutes, or that the moving party waives any right by failing to except to his doing so. No such absurdity was ever heard of. The objection of the respondent is that the motion of the defendant for a dismissal at the close having been reserved by the trial judge until after verdict, there is in the record no exception to the denial of that motion, which did not occur until after verdict. The appellant omitted to file such exception, as it had the right to do. I concur in the opinion on the main question, and also that the order denying the motion on the minutes for a new trial brings up to this court, though not to the Court of Appeals, the question of whether there was any evidence on which to go to the jury, as well as the weight of evidence, and all errors of law, provided the motion be made on such ground or grounds. This is made so plain by section 999 of the Code itself, that citation of authority for it must rarely be necessary. Brennan v. City of New York, 123 App. Div. 7, 107 N. Y. Supp. 455.

